**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

---

**IDG, USA, LLC,**

                        **Plaintiff**

    v.                                     **MEMORANDUM OF LAW**

**KEVIN J. SCHUPP,**                   **Civil No. 10 CV 0076-WMS**

                        **Defendant.**

---

### DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF CROSS-MOTION AND IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

### INTRODUCTION

    Defendant KEVIN J. SCHUPP (hereinafter "Defendant" or "Schupp"), by his attorneys, SCHRÖDER, JOSEPH & ASSOCIATES, LLP, submits this Memorandum of Law in support of his cross-motion for an order dismissing the Complaint with prejudice pursuant to Federal Rules of Civil Procedure ("FRCP"), Rule 12 (c) and in opposition to Plaintiff's motion for a preliminary injunction pursuant to FRCP Rule 65.

    Defendant's cross-motion is based upon the pleadings and the documents attached to the pleadings which show that: (1) Plaintiff's first and second causes of action for alleged breach of contract must fail because Plaintiff breached the terms of the employment agreement by not paying the stated base salary to Defendant with the result that the non-compete and non-solicitation provisions, as well as the entire contract, are not enforceable; (2) Plaintiff's third, fourth and fifth causes of action based upon alleged disclosure, use and theft of trade secrets and confidential information must fail because Plaintiff's Complaint does not identify any document containing confidential information or trade secrets that have been stolen or used and makes only

conclusory allegations with no explanation as to the factual basis for these claims and the documentary evidence attached to the Answer shows that pricing and quantities of services purchased by customers is not confidential but rather is shared by customers with sales representatives and further shows that manufacturers' listing prices are available on the Internet with the result that these claims all fail to state a claim under the Supreme Court's ruling in *Bell Atlantic Corp. v. Twombly, et al.*, 550 U.S. 544, 127 S.Ct. 1955 (2007) and its progeny.

Additionally, Plaintiff's motion for preliminary injunction must fail because, given the lack of merit to its claims as a matter of law, Plaintiff has not and cannot show the necessary likelihood of success on the merits. With regard to the claims for breach of contract, while unenforceable due to the Plaintiff's own breach of contract, the motion for preliminary injunction also fails because the non-compete clauses on which Plaintiff relies cannot be enforced where, as here, there has been constructive termination of the Defendant's employment. Likewise, the third, fourth and fifth causes of action based upon alleged disclosure, use and theft of trade secrets and confidential information must fail because Plaintiff's Complaint does not identify any document containing confidential information or trade secrets that has been stolen or used and its motion for preliminary injunction makes only conclusory allegations with no explanation as to the factual basis for these claims; Defendant Schupp denies in his affidavit taking any information from Plaintiff; and the documentary evidence attached to the Answer shows that pricing and quantities of services purchased by customers is not confidential but rather is shared by customers with sales representatives and manufacturers' listing prices are publicly available on the Internet.

While this lack of the necessary showings as to likelihood of success on the merits alone is sufficient to defeat the motion for preliminary injunction, Plaintiff's motion fails on the

independent ground that it has not shown irreparable damage since the only arguable damage (if Plaintiff's claims had any merit, which they do not) is monetary damage and the only party to be irreparably harmed is Defendant who will lose his ability to earn a livelihood to which he is entitled as a matter of law, particularly given the unenforceability of the non-compete restrictions upon which Plaintiff relies. Thus, the balancing of the interests clearly falls in Defendant's favor.

## APPLICABLE STANDARDS

Defendant's cross-motion to dismiss the Complaint is made pursuant to FRCP Rule 12 (c) which permits a party to move for dismissal on the pleadings. "The test for evaluating a 12 (c) motion is the same as that applicable to a motion to dismiss under FRCP 12 (b) (6)." *Faconti v. Potter*, 2007 U.S. App Lexis 22719 (2$^d$ Cir. 2007); *Irish Lesbian and Gay Organization v. Giuliani*, 143 F.3d 638 (2$^d$ Cir. 1998). On a motion under Federal Rule 12 (c), "courts, without converting the motion to one under Rule 56, may consider documents attached to [the] complaint [and the answer] exhibits or incorporated by reference … matters of which judicial notice may be taken, or … documents either in plaintiff's possession or of which plaintiff's had knowledge and relied upon in bringing suit." *Dewees v. Legal Services Inc.* 2007 U.S. Dist. Lexis 47836 at 5 (E.D.N.Y. 2007)*; Faconti,* 2007 U.S. App Lexis 22719.

Moreover, in this case, as shown below, the pleadings demonstrate that all of Plaintiff's claims are implausible and therefore subject to dismissal under the Supreme Court decision in *Bell Atlantic Corp. v. Twombly, et al.*, 550 U.S. 544, 127 S.Ct. 1955 (2007) ("*Twombly*"). This is true with respect to the contract claims in the first and second causes of action because the indisputable facts and documentary evidence show that Plaintiff materially breached the non-compete agreement it seeks to enforce by reducing Defendant's agreed-upon salary set forth in

the agreement by approximately ten percent and further because the Answer shows that Plaintiff constructively terminated Defendant. Likewise, the third, fourth and fifth causes of action fail to state a claim because Plaintiff's Complaint does not identify the "confidential information" or "trade secrets" allegedly stolen or used and makes only conclusory allegations with no explanation as to the factual basis for these claims while the documentary evidence attached to the Answer shows that pricing and quantities of services purchased by customers is not confidential but rather is shared by customers with sales representatives and manufacturer's listing prices are available on the Internet. Thus, in its supporting memorandum, Plaintiff makes the futile argument that Defendant should be enjoined from earning a living on grounds that Defendant allegedly has "caused" customers to seek competitive bids when they did not do so in the past. *See, e.g.*, Plaintiff's Memorandum of Law at 5.

Claims of this sort must be dismissed under *Twombly* and its progeny. In *Twombly*, the Supreme Court held that a complaint should be dismissed under Rule 12 (b) (6) or Rule 12 (c) where a Plaintiff relies on conclusory and formulistic allegations and fails to plead facts demonstrating an "entitle[ment] to relief." The Court observed that while a plaintiff is not required to plead detailed facts, the "factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly, et al.*, *supra,* 127 S. Ct. at 1965, *citing* 5 C. Wright & A. Miller, *Federal Practice and Procedure*, pp. 235-236 (3$^d$ Edition 2004). In determining whether a plaintiff has satisfied this burden, the Supreme Court directed that District Court examine the pleadings to determine whether the factual allegations, taken as true, are "suggestive enough" to render a plaintiff's claims "plausible." *Id.* As the Court noted, "the need at the pleading stage for allegations "plausibly suggesting" a plaintiff's entitlement to relief, "reflects the threshold requirements of Rule 8 (a) (2) that the plain statement possess enough heft

4

to show that the pleader is entitled to relief." *Bell Atlantic Corp. v. Twombly, et al.*, *supra,* 127 S. Ct. at 1966.

As one court observed, "in the wake of *Twombly,* courts are to apply a flexible plausibility standard which obliges a pleader to amplify a claim with some factual allegation in those contexts where such amplification is needed to render the claim plausible. [citations omitted]…Under this standard, a complaint may be dismissed where it fails to plead enough facts to state a claim to relief that is plausible on its face… Where a plaintiff has not nudged its claims across the line from conceivable to plausible, its complaint must be dismissed." *Johnson & Johnson v. Guidant Corporation*, 2007 U.S. Dist. Lexis, 64114 at *14-15. (S.D.N.Y. 2007); *Moore v. Webster Central School District,* 2007 U.S. Dist. LEXIS 69142 (W.D.N.Y. 2007).

Of course, given the foregoing, Plaintiff cannot meet even the first prong essential to its motion for preliminary injunction. Namely, Plaintiff cannot make the necessary showings as to likelihood of success on the merits. Thus, the Court need go no further than this first prong to deny Plaintiff's motion for preliminary injunction. Moreover, it has been observed that "a preliminary injunction barring competition by the employee should only be granted when the 'right is plain from the undisputed facts. If the right depends upon an issue which can only be decided upon a trial, the injunction cannot be granted' [citations omitted]." *Cool Insuring Agency, Inc v. Rogers*, 125 A.D.2d 758, 509 N.Y.S. 2d 180 (3$^d$ Dept. 1986). This because of the strong public policy under New York law favoring an individual's right to earn a livelihood.

# ARGUMENT

## POINT ONE

**PLAINTIFF'S BREACH OF CONTRACT CLAIMS MUST FAIL AS MATTER OF LAW GIVEN THE DOCUMENTARY EVIDENCE AND INDISPUTABLE FACTS**

Defendant Schupp began working for Austin Ford Login, Inc. ("Austin Ford") as a Sales Associate in approximately 1992. When Austin Ford was acquired by Plaintiff IDG USA, LLC ("IDG") in 1998, Defendant continued to work as before in his capacity as a Sales Associate with little or no change in his duties and the customers he serviced. Throughout his career at Austin Ford and continuing to date, Defendant has made his living selling a wide variety of supplies to manufacturers for maintenance, repair, and operating activities. Affidavit of Kevin J. Schupp sworn to on February 8, 2010 ("Schupp Affid."), para. 2.

Schupp was not asked to enter into an employment agreement by either Austin Ford or IDG until May of 2008 when IDG was being considered for purchase by an investment group. Thus, in May of 2008, Schupp was asked to sign an employment agreement which did not change the basic nature of his work but did give him a raise in base pay from approximately $70,000 to $77,047 per year and paid him an additional $3,000 in 2008 when he signed the agreement. In addition to the approximately $7,000 increase in his base wage, the employment agreement contained other provisions regarding the terms and conditions of his employment including, *inter alia,* certain non-compete and non-solicitation restrictions, a provision governing confidential information and a requirement that any modification of the employment agreement be in writing. Schupp Affid. para. 3. A copy of the employment agreement ("Employment Agreement") is attached to the Complaint as Exhibit A.

In less than a year after Schupp executed the Employment Agreement, in March, 2009, IDG cut Schupp's base salary back to an amount which was very close to the base salary he had

before he executed the Employment Agreement. Schupp Affid. para. 4. As a result of this unilateral wage reduction in March, 2009, Schupp's base salary paid in 2009 was approximately $71,000 as documented in Schupp's year-end pay stub attached to the Answer as Exhibit A.

The Court need not consider more than the Employment Agreement itself (attached to the Complaint as Exhibit A) and the year-end pay stub (attached to the Answer as Exhibit A) to dismiss the first and second causes of action for breach of contract. It is hornbook law in New York that a plaintiff cannot enforce a contract where, as here, the plaintiff has "failed to fully perform its contract obligations." *See, e.g., Team Star Contracting, Inc. v. Dynamic Painting Corp.*, 263 A.D. 2d 504, 695 N.Y.S.2d 363 ($2^d$ Dept. 1999).

Furthermore, this reduction in base wages was the beginning of a series of acts which constituted what is known under New York law as "constructive termination" which renders non-compete/non-solicitation clauses unenforceable. Defendant was denied the very material raise of his base pay from $70,000 to $77,046 without which he would not have signed the Employment Agreement and which reduction substantially affected his ability to support his family. Schupp Affid. para. 5. Further, IDG's argument that the reduction in pay was "across the board"—while irrelevant to its breach of contract claims—does not take into account the fact that most—if not all—of the employees whose pay was reduced, did not have employment agreements such as Defendant's Employment Agreement which fixed their annual salaries. Schupp Affid. para. 5.

Presumably recognizing that it had breached the Employment Agreement and no longer had any right to enforce the non-compete or non-solicitation clause, IDG asked Defendant Schupp to sign a new agreement in December 2009 captioned "Confidentiality Agreement," a copy of which is attached to the Complaint as Exhibit B. Unlike Schupp's Employment

7

Agreement, this new agreement had no non-solicitation or non-compete clause and only required that Defendant honor his duty of loyalty by not using or disclosing confidential information. Complaint, Exhibit B. This document is very vague about what is "confidential information" and only requires—in essence—that Schupp act as an employee act would regardless of any written agreement in honoring the duty of loyalty. *Id.* Therefore, Defendant signed it. Schupp Affid. para.6. Of course, as discussed below, there has been no breach of the duty of loyalty in any event so this document does not afford a basis for a breach of contract claim or a basis for granting Plaintiff's motion for preliminary . *Infra* at 11 to 16. In any event, given the unilateral reduction of Defendant's base pay and the other acts of constructive termination discussed below, Plaintiff would not have signed this Exhibit B to the Complaint if it had contained a non-compete restriction or non-solicitation restriction. Schupp Affid. para. 6.

Plaintiff also is not entitled to enforce the non-compete and non-solicitation provisions of the Employment Agreement because Defendant's employment was constructively terminated. After the Plaintiff breached the Employment Agreement by unilaterally reducing Defendant's base salary, the Plaintiff took other steps, over several months, that ultimately made it impossible for Schupp to continue to work for IDG, including steps that decreased his ability to earn to the commissions which had always been part of his compensation and ultimately made it clear that he must look for new employment to protect his ability to earn a living. Schupp Affid. para. 7.

For example, not only did Plaintiff increase the margins after IDG was acquired in 2008 so that Schupp's customers realized that they could easily get better prices elsewhere, but also IDG actually restructured Schupp's commission formula in February, 2009 so that he had to achieve a 13% increase over his 2008 budget in order to realize any commissions. Schupp Affid.

8

para. 8.  Given the poor economy, it was readily clear that Schupp would earn little or no commissions with this change to his commission formula.  Schupp Affid. para. 8.

As Schupp was losing his customer base due to the new increased margin policies, IDG also announced that it was taking away his week of paid vacation but then stated that Schupp would instead have forty hours of sick leave and, if he did not use the sick leave, he would receive $500.  This meant, in effect, that the value of Schupp's vacation leave was unilaterally reduced by approximately fifty percent. Schupp Affid. para. 9.

Most significantly of all, in addition to the unilateral reduction of Schupp's base salary and commission compensation, IDG restructured the department where Schupp worked and simply reassigned five of Schupp's customers whom he had supplied for years to two other individuals, thereby reducing or eliminating Defendant's ability to earn commissions and, significantly, severing his customer relationships which he had spent years building.  This occurred when Schupp's two supervisors were demoted, with one of them joining Schupp and co-sales representative Mr. Carbone as "sales managers."  Schupp Affid. para.10. Thus, there were now three instead of two sales representatives in the Amherst office and IDG simply decided to allocate five of Schupp's customers to his former supervisor and to his fellow-sales representative, Mr. Carbone. *Id.*  For Defendant, the "writing was on the wall" and he needed to find a new position before his customer base and career were totally destroyed. *Id.*

In New York, it is hornbook law that employment agreements are not enforceable where the plaintiff employer has constructively terminated the employee by taking  actions such as those present here in reducing the employee's salary, materially changing the terms of employment or making the employee's working conditions so intolerable that a reasonable person would feel forced to resign.  For example, in *Excelaire Service Inc. v. Wolkiewicz*, 2006

N.Y. Misc. LEXIS 2634, 236 N.Y. L.J. 60 (Sup.Ct. Suffolk Co. 2006), the court granted employee's motion for dismissal of the employer's complaint seeking to enforce an employment agreement where the employer breached the agreement by reducing the employee's salary.

The Court of Appeals, upon certification of the question by the Second Circuit, advised the Second Circuit in *Morris v. Schroder Capital Management International*, 7 N.Y. 3d 616, 622-623, 825 N.Y.S. 2d 697 (2006)—a decision issued seven years **after** the 1999 *BDO Seidman* case upon which Plaintiff relies—that, where an employer constructively discharges an employee—as here—an employer should not be permitted to enforce what becomes and an unreasonable noncompete/nonsolicit clause which denies the employee his or her benefit under the guise of the "employee choice doctrine." Citing the *BDO Seidman* case itself, the Court of Appeals explains to the Second Circuit "we note that noncompete clauses in employment agreements are not favored and will only be enforced to the extent reasonable and necessary to protect valid business interests." *Morris v. Schroder Capital Management International, supra*, 7 N.Y. 3d at 622-623. Then, the Court of Appeals explains to the Second Circuit, while an exception to this general rule of non enforceability has been created under the "employee choice doctrine," the "employee choice doctrine" does not apply where there is "constructive termination" of employment which causes the employee to resign. *Morris v. Schroder Capital Management International, supra*, 7 N.Y. 3d at 620-621. Hence, Plaintiff's reliance on *BDO Seidman* is misplaced.

In sum, not only should the Plaintiff's motion for preliminary injunction be denied, but also, Plaintiff's first and second causes of action should be dismissed with prejudice.

# POINT TWO

## PLAINTIFF'S THIRD, FOURTH AND FIFTH CLAIMS MUST BE DISMISSED BECAUSE THE COMPLAINT FAILS TO STATE A CAUSE OF ACTION AS TO THESE CLAIMS AND INJUNCTIVE RELIEF MUST DENIED BECAUSE THERE HAS BEEN NO SHOWING OF THE EXISTENCE OR THEFT OR USE OF TRADE SECRETS OR CONFIDENTIAL INFORMATION

Other than conclusory, unexplained allegations, the Complaint does not allege that Defendant took any trade secrets or confidential information with him when he left IDG. Complaint, *passim*. Defendant, of course, has submitted an affidavit confirming that he took no trade secrets or confidential information and that he did nothing to harm his former employer IDG during his employment with IDG. Schupp Affid. para. 11. Defendant took no documents and any information he did have in his mind was otherwise available publicly, such as the names, telephone numbers, and addresses of his customers. Schupp Affid. para. 11. Of course, it is hornbook law that it is not sufficient to show that a former employee "was privy to sales reports containing detailed sales information concerning the plaintiff's customers" and "an employee's recollection of information pertaining to specific needs and business habits of particular customers is not confidential [citations omitted]." *Natural Organics, Inc. v. Kirkendall*, 52 A.D. 3d 488, 490, 860 N.Y.S. 2d 142, 144 (2nd Dept. 2008).

Since leaving IDG, Defendant has continued his career and has pursued orders with his customers, but he has not used any confidential information obtained from IDG to sell products and, again, he took no documents with him. Schupp Affid. para. 12. Indeed, there was no need for him to do so and Defendant has no idea what it is that IDG contends he is using. *Id.*

While working at IDG, Defendant Schupp sold tens of thousands of different items to customers from different suppliers and there would be no way for him to memorize prices or other information. Schupp Affid. para. 13. As Schupp explains in his affidavit, customers

sometimes asked for specific information and such information was initially accessed from the computer for Defendant by his supervisor. *Id.* Later, Defendant was permitted to obtain such detailed information from the computer himself, but again he never retained it after using it, only was permitted to have it temporarily for the sales presentation and certainly took no such information or documentation with him when he left his employment with IDG. *Id.* Additionally, an example of a receipt dated April 22, 2002 for information provided to Schupp during his employment is attached to the Complaint as Exhibit E, but—as was the case for all such information provided to him—Schupp retained no copies of such documents after completion of the sales presentation for which it was prepared and he cannot recall the contents of this April 22, 2002 sales presentation or any other such sales presentation. *Id.*

Moreover, Schupp has explained that he would have no need to have or use such information in his new employment position. Schupp Affid. para. 14. Customers will tell the sales representative what the competitor has charged for specific volumes and items if the customer wants Schupp to meet or better the competitor's price and he has no need to take or use IDG information to serve his customers. An example of a bid request from customer is attached as Exhibit B to the Answer. As explained by Defendant Schupp in his affidavit, he understands this order is being bid upon by Schupp's new employer, IDG and yet another competitor. *Id.* As is readily evident, there are many, many items covered in this bid request and the customer is informing all three competitors what the volume purchased was and there is a request for a bid on each item for this year. *Id.* As this simple example shows, there are just too many items for Defendant Schupp to memorize prices offered, and customers readily offer whatever information is needed to obtain the best pricing for them. *Id.* Given this, IDG is simply incorrect in deeming there to be "confidential" information in this industry. *Id.*

Likewise, the manufacturers often provide their list prices on the Internet, as shown by the examples attached to the Answer as Exhibit C. Thus, not only would it have been impossible for Defendant Schupp to memorize prices or margins on the thousands and thousands of items, volumes and products which are sold to his customers, but there would be no need for him to do so as this information is not treated as confidential by the customers who are simply trying to get the best price they can get from all the competitors in the market place or the manufacturers who trying to sell their goods to the middleman. Schupp Affid. para. 14 and Answer Exhibit C. Thus, IDG has just as much of a chance in succeeding in obtaining these sales as does Defendant's new employer and Defendant has no special advantage because he does not have confidential information or trade secrets from IDG. Schupp Affid. para. 14.

The case law is clear that where there is evidence that prospective customers actually volunteer information such as price quotations, customer preferences, pricing information and other competitive information regarding competitors in order to obtain a better deal, the information is not deemed to be "confidential" or "trade secret" or "protectible." *See, e.g., Zurich Depository Corp. v. Gilenson*, 121 A.D. 2d 443, 503 N.Y.S. 2d 415 (2nd Dept. 1986) (prospective customers volunteer pricing information and therefore no protactable confidential information or trade secrets found to exist); *Scott Paper Co. v. Finnegan*, 101 A.D. 2d 787, 789, 476 N.Y. S. 2d 316 (1st Dept. 1984) (data such as customer preferences, pricing information and other competitive information readily available and freely communicated and therefore found not to be protectible); *Altana, Inc. v. Stuart Schansinger*, 111 A.D. 2d 199, 200, 489 N.Y.S. 2d 84, 86(2$^{d}$ Dept. 1985) (customer, supplier and pricing information available in market place and publicly and therefore not protectible); and *Primo Enterprise v Bachner*, 148 A.D. 2d 350, 352,

539 N.Y.S. 2d 320, 321 (1st Dept. 1989) (preliminary injunction vacated where plaintiff failed to show customer information was not publicly available).

In this case, the Plaintiff has failed to make even the most basic showings required by the law in its moving papers. As noted above, Plaintiff makes merely conclusory allegations in its moving papers regarding alleged "trade secrets" and "confidential information" and does not provide any explanation of the basis for its demand relief other than to rely on a contract that is not enforceable as a matter of law and to complain about customers "requesting pricing information and quotes from IDG, when none have done so in the past ten years." Plaintiff's Memorandum at 5 and *passim*. This does not meet Plaintiff's heavy burden of proof on its preliminary injunction motion to present actual facts to support the existence of trade secrets or confidential information and to show the actual misappropriation and use of such information by the defendant. This heavy burden of proof in cases of this type is based upon the recognition under New York law of an injunction's impact upon the former employee's ability to earn a livelihood. *See, e.g., IVI Environmental, Inc. v McGovern*, 269 A.D.2d 497, 707 N.Y.S. 2d 107 (2nd Dept. 2000) (denial of preliminary injunction affirmed where the plaintiff employer failed to meet its heavy burden of proof on trade secrets or confidential information); *Cool Insuring Agency, Inc. v. Rogers*, 125 A.D. 2d 758, 509 N.Y.S. 2d 180, 183-184 (3rd Dept. 1986) (grant of preliminary injunction reversed where plaintiff employer "failed to make any **persuasive** evidentiary showing of defendant's actual or threatened misappropriation of trade secrets or confidential information" (emphasis added)); and *Primo Enterprise v. Bachner, supra*, 148 A.D.2d at 352-353, 539 N.Y.S.2d at 321 (preliminary injunction reversed where plaintiff failed to show that defendant had access to information deserving of protection as a trade secret).

Needless to say, given the record before this Court, the balancing of the equities necessitates a denial of the preliminary injunction demanded. As Defendant Schupp has stated in his opposing affidavit: "Having brought this lawsuit against me and seeking to restrain me from selling to the thirteen customers whom I have served over the years, Plaintiff seeks to have me fired from my current employment position which will place me and my family in economic jeopardy and deprive me of my ability to earn a living." Schupp Affid. para. 15. While Plaintiff has failed to make any of the necessary showings required to support a preliminary injunction against Schupp's sale of products to the thirteen customers in question, Defendant has shown that this relief will irreparably harm him in his ability to earn a livelihood. Schupp Affid. *passim* and para. 15.

Moreover, as noted above, Plaintiff IDG has filed a Complaint with this Court which does not pass muster under the Supreme Court's decision in *Twombly*. Having based its first two causes of action on an unenforceable Employment Agreement and having based its third, fourth and fifth causes of action on conclusory allegations which do not identify any protectible trade secrets or confidential information "plausibly suggesting" that Plaintiff IDG is entitled to any relief against Defendant Schupp, the Complaint should be dismissed in its entirety. *Bell Atlantic Corp. v. Twombly, et al.*, *supra,* 127 S. Ct. at 1965.

## CONCLUSION

For all the foregoing reasons, Plaintiff's motion for a preliminary injunction under FRCP Rule 65 should be denied and Defendant Schupp's cross-motion for dismissal of the Complaint pursuant to FRCP Rule 12 (c) should be granted.

Dated: March 1, 2010
     Buffalo, New York

Respectfully submitted,

**SCHRÖDER, JOSEPH & ASSOCIATES, LLP**

By: s/ Linda H. Joseph
      Linda H. Joseph, Esq.
      766 Ellicott Street
      Buffalo, New York 14203
      (716) 881-4902 – Telephone
      (716) 881-4909 – Fax
      ljoseph@sjalegal.com

*Attorneys for Defendant*
*Kevin J. Schupp*